# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

Case No. 10-1091

## HEATHER SEIBERT,

Plaintiff - Appellant,

v.

## LUTRON ELECTRONICS,

Defendant - Appellee.

## BRIEF FOR APPELLEES

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Docket Number 2:08-cv-05139

Peter A. Romero, Esquire (NY ID No. PR 1658)
FRANK & ASSOCIATES, PC
500 Bi-County Blvd, 112N
Farmingdale, NY 11735

Elizabeth A. Malloy, Esquire (PA ID No. 48297)
BUCHANAN INGERSOLL & ROONEY PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555

*Attorneys for Appellees Lutron Electronics*

## CERTIFICATE OF INTERESTED PERSONS

Lutron Electronics Co., Inc. does not have any parent corporation and no publicly held corporation owns 10% or more of its stock.

# **TABLE OF CONTENTS**

I.      COUNTER-STATEMENT OF JURISDICTION ................................. 1

II.     COUNTER-STATEMENT OF ISSUES ............................................. 1

III.    COUNTER-STATEMENT OF THE CASE ........................................ 2

IV.     COUNTER-STATEMENT OF FACTS .............................................. 4

V.      SUMMARY OF ARGUMENT ......................................................... 14

VI.     COUNTER-STATEMENT OF STANDARD OF REVIEW ............. 15

VII.    ARGUMENT ................................................................................... 16

  A.  Even Giving All Reasonable Inferences To Seibert, The District Court
  Correctly Determined That Seibert Is Not Disabled Within The Meaning
  Of The ADA. .......................................................................................... 16

  B.  The District Court Properly Dismissed Seibert's "Regarded As"
  Disability Claim Because Seibert Failed to Exhaust Administrative
  Remedies and There Is No Record Evidence Seibert Was "Regarded As"
  Disabled. ................................................................................................. 24

  C.  The District Court Properly Concluded That Seibert Failed To
  Establish A Prima Facie Case Of Discrimination And That There Is No
  Evidence That Defendant's Proffered Reasons Were A Pretext For
  Disability, Sex Or Pregnancy Discrimination. ....................................... 27

VIII.   CONCLUSION ............................................................................... 34

# TABLE OF AUTHORITIES

**Cases**

*Abramson v. William Paterson Coll. of N.J.,*
    260 F.3d 265 (3d Cir. 2001) ........................................................................ 18

*Anderson v. Liberty Lobby,*
    477 U.S. 242, 106 S. Ct. 2505 (1986) ...................................................... 19

*Ashton v. Am. Tel. & Tel. Co.,*
    225 Fed. Appx. 61 (3rd Cir. 2007) ........................................................... 22

*Atkinson v. Lafayette Coll.,*
    460 F.3d 44 (3d Cir. 2006) ........................................................................ 24

*Bernhard v. Nexstar Broad. Group, Inc.,*
    146 Fed. Appx. 582 (3rd Cir. 2005) ......................................................... 33

*Billet v. CIGNA Corp.,*
    940 F.2d 812 (3rd Cir. 1991) ..................................................................... 33

*Boykins v. Lucent Tech.,*
    78 F. Supp. 2d 402 (E.D. Pa. 2000) ......................................................... 28

*Caisson Corp. v. Ingersoll-Rand Co.,*
    622 F.2d 672 (3d Cir. 1980) ...................................................................... 23

*Cardenas v. Massey,*
    269 F.3d 251 (3d Cir. 2001) ...................................................................... 28

*Cassimy v. Bd. of Educ. of the Rockford Public Schs.,*
    461 F.3d 932 (7th Cir. 2006) ..................................................................... 25

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548 (1986) ................................................ 20, 34

*Colwell v. Suffolk County Police Dep't,*
    158 F.3d 635 (2d Cir. 1998) ...................................................................... 23

*EEOC v. Agro Distrib., LLC,*
    555 F.3d 462 (5th Cir. 2009) ..................................................................... 16

*Eshelman v. Agere Sys., Inc.,*
    554 F.3d 426 (3d Cir. 2009) ...................................................................... 26

*Estate of Oliva,*
    604 F.3d 788 (3rd Cir. 2010) ..................................................................... 15

Fed. R. Civ. P. 56(e) ........................................................................... 20

*Fletcher v. Lucent Tech., Inc.,*
    207 Fed. Appx. 135 (3d Cir. 2006)........................................... 23

*Fredricksen v. United Parcel Serv. Co.,*
    581 F.3d 516 (7th Cir. 2009) ..................................................... 16

*Fuentes v. Perksie,*
    32 F.3d 759 (3d Cir. 2003) ................................................. 27, 28

*Healy v. New York Life Ins. Co.,*
    860 F.2d 1209 (3d Cir.1988) ..................................................... 34

*Josey v. John R. Hollingsworth Corp.,*
    996 F.2d 632 (3d Cir. 1993) ...................................................... 28

*Kautz v. Met-Pro Corp.,*
    412 F.3d 463 (3d Cir. 2005) ............................................... 27, 34

*Kelly v. Drexel Univ.,*
    94 F.3d 102 (3d Cir. 1995) ........................................................ 26

*Landgraf v. USI Film Prods.,*
    511 U.S. 244, 114 S. Ct. 1483 (1994).................................... 16

*Langley v. Merck & Co.,*
    186 Fed. Appx. 258 (3d Cir. 2006).......................................... 32

*Lytes v. D.C. Water & Sewer Auth.,*
    572 F.3d 936 (D.C. Cir. 2009) .................................................. 16

*Makky v. Chertoff,*
    541 F.3d 205 (3rd Cir. 2008) .................................................... 15

*Mascioli v. Arby's Rest. Group, Inc.,*
    610 F. Supp. 2d 419 (W.D. Pa. 2009)...................................... 17

*Maslanka v. Johnson & Johnson, Inc.,*
    305 Fed. Appx. 848 (3rd Cir. 2008) .................................. 22, 34

*Matsushita v Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S. Ct. 1348 (1986)................................ 20, 34

*McDonald v. Commonwealth,*
    62 F.3d 92 (3d Cir. 1995) .......................................................... 18

*Milholland v. Sumner County Bd. of Educ.,*
    569 F.3d 562 (6th Cir. 2009) ..................................................... 16

*Murphy v. United Parcel Serv., Inc.*,
  527 U.S. 516, 119 S. Ct. 2133 (1999)...................................................................... 17

*Ogborn v. United Food & Commercial Workers Union*,
  305 F.3d 763 (7th Cir. 2002) .................................................................. 22, 26

*Reifer v. Colonial Intermediate Unit 20*,
  462 F. Supp. 2d 621 (M.D. Pa. 2004)...................................................... 17, 18

*Rineheimer v. Cemcolift, Inc.*,
  292 F.3d 375 (3d Cir. 2002) ..................................................................... 18, 22

*Sanders v. Anderson Prods., Inc.*,
  91 F.3d 1351 (9th Cir. 2006) .......................................................................... 22

*Scott v. N.J.*,
  143 Fed. Appx. 443 (3d Cir. 2005)................................................................... 28

*Shaner v. Synthes*,
  204 F.3d 494 (3rd Cir. 2000) .......................................................................... 17

*Silvestre v. Bell Atl. Corp.*,
  973 F. Supp. 475 (D.N.J. 1997)....................................................................... 33

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502, 113 S. Ct. 2742 (1993).............................................................. 33

*Sutton v. United Airlines, Inc.*
  527 U.S. 471, 119 S. Ct. 2139 (1999).............................................................. 25

*Torre v. Casio, Inc.*,
  42 F.3d 825 (1994)........................................................................... 29, 30, 31

*Toyota Motor Mfg., Ky., Inc. v. Williams*,
  534 U.S. 184, 122 S. Ct. 681 (2002)................................................................ 18

*Waiters v. Parsons*,
  729 F.2d 233 (3d Cir. 1984) ............................................................................ 24

*Williams v. Bristol-Meyers Squibb Co.*,
  85 F.2d 270 (7th Cir. 1996) ............................................................................ 28

## Statutes

28 U.S.C. §1291.................................................................................................. 1

Americans With Disabilities Act, 42 U.S.C. §12101 et seq. .................. 1, 17, 23

Pennsylvania Human Relations Act, 43 P.S. § 951 et seq..................................... 1

Section 701 Pregnancy Discrimination Act, 28 U.S.C. §1331 ........................................... 1

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. .................................. 1

**Rules**

Fed. R. App. P. 4(a)(1)..................................................................................................... 1

Fed. R. Civ. P. 56(c) ...................................................................................................... 16

## I.     COUNTER-STATEMENT OF JURISDICTION

The district court had jurisdiction over the underlying claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq.; the Americans With Disabilities Act, 42 U.S.C. §12101 et seq.; and Title VII of the Civil Rights Act of 1964, Section 701the Pregnancy Discrimination Act, pursuant to 28 U.S.C. §1331. The district court had jurisdiction over the underlying claim under the Pennsylvania Human Relations Act, 43 P.S. Section 951 et seq., pursuant to 28 U.S.C. §1367.

Appellant Heather Seibert ("Seibert") filed her Notice of Appeal on December 28, 2009, within thirty (30) days after the district court Order entered summary judgment in favor of Appellee Lutron Electronics ("Lutron") on November 30, 2009.  The Notice of Appeal is timely under Fed. R. App. P. 4(a)(1). This Court has jurisdiction pursuant to 28 U.S.C. §1291.

## II.    COUNTER-STATEMENT OF ISSUES

1.     Did the district court properly enter summary judgment in favor of Lutron on Seibert's claim of disability discrimination because Seibert was not disabled or "regarded as" disabled under the ADA?

Suggested Answer:  Yes.

1

2.     Did the district court properly enter summary judgment in favor of

Lutron on Seibert's claims of perceived disability discrimination because Seibert

failed to exhaust administrative remedies?

Suggested Answer:  Yes.

3.     Did the district court properly enter summary judgment in favor of

Lutron on Seibert's claims of gender, pregnancy and disability discrimination

because Seibert failed to established a prima facie case of discrimination or failed

to establish that Lutron's legitimate, non-discriminatory reasons for its actions were

a pretext for discrimination?

Suggested Answer:  Yes.

## III.     COUNTER-STATEMENT OF THE CASE[1]

### A.     Background

On or about October 8, 2008, Seibert filed a Complaint against Lutron in the

Court of Common Pleas of Lehigh County, Pennsylvania, Case No. 2008-C-2952.

On October 28, 2008, the action was removed to the United States District Court

for the Eastern District of Pennsylvania on the ground that Seibert had asserted

federal claims against Lutron.  Lutron filed its Answer on December 2, 2008.

After the conclusion of discovery, Lutron filed a motion for summary

judgment, which Seibert opposed.  On November 30, 2009, the district court,

---

[1] There are no other active cases or proceedings related to the matter sub judice.

Honorable Lawrence F. Stengel, granted Lutron's motion for summary judgment and dismissed the Complaint in its entirety with prejudice. Seibert filed a timely Notice of Appeal on December 28, 2009.

Seibert filed her opening brief on appeal on July 2, 2010. She filed an Appendix on July 6, but never consulted with counsel for Lutron about the contents of the Appendix. On July 8, the Court issued a non-compliance Order regarding the Appendix. Seibert filed an Amended Appendix on July 13. On July 14, the Court issued a second non-compliance Order regarding the Appendix. On July 19, Seibert filed an Amended Brief and Appendix, but she has still not complied with the Third Circuit's rules. The filed Appendix does not contain a Volume II and does not include the exhibits which were part of the summary judgment record before the District Court. According to Seibert, her counsel was contacted by the Clerk's office on July 23 regarding additional non-compliance on the Brief, including but not limited to font size and blue cover pages, and she filed a Motion for an Extension of Time and Leave to file a corrected brief. Seibert requested until August 2, 2010 to file the same. However, to date, no corrected Brief has been filed. Lutron herewith is filing a Motion for Leave to File Supplemental Appendix which contains the proper references.

## IV.    COUNTER-STATEMENT OF FACTS

### A.    <u>Background</u>

Lutron is a company which specializes in the manufacture of lighting controls.  (A7)[2]  Lutron maintains its international corporate headquarters in Coopersburg, PA, and operates two production and distribution facilities in Pennsylvania - the Brookdale Manufacturing Center in Alburtis, PA and the Meadows Distribution Center in Allentown, PA ("Meadows I" and "Meadows II").  (A7)

Seibert became a regular, full-time employee of Lutron in June 1997, when she was hired for an entry level assembly position in Lutron's Employee Development Program.  (A9)  The Employee Development Program is designed to provide participants of the Program with cross-training and afford employees an opportunity to learn various aspects of Lutron's operations.  (A9)  Participants in the Employee Development Program routinely rotate from one position to another.  (A9)  The Program is designed to enhance the growth of its participants through varied work experience.  Its goal is to make each participant familiar with, and competent in, a broad range of Lutron's manufacturing operations as they rotate through different positions.  (A9)

---

[2] References to "A___" refer to the Supplemental Appendix filed by Lutron contemporaneously herewith.

**B.    Lutron's Attendance Policies and Procedures**

Lutron maintains an Employee Handbook setting forth its policies and procedures.  Seibert received Lutron's Employee Handbook.  (A72)  Among the items set forth in the Employee Handbook is the Company's policies and procedures relating to vacation.  (A14)  The policy requires employees to designate in advance which days they intend to use as vacation days throughout the year.  (A14)  The Employee Handbook provides in pertinent part:

> Each year, every employee will receive a Vacation Request Form.  This form will indicate the number of eligible paid vacation days you have for the year ahead.  The Vacation Request Form is be completed and returned to your supervisor for his/her review and approval....  Vacations are scheduled according to the needs of the business.

(A14; A24; A126)

Seibert frequently took unscheduled vacation days without obtaining prior approval or giving advance notice of her absence.  (A14)  Seibert was in the habit of calling out from work and then marking her absence as "vacation" so that she would be paid for the day.  (A129)

**C.    Seibert's Early Attendance Issues - January 2005 through June 2006**

Beginning in or about January 2005, and continuing throughout the rest of her employment at Lutron, Seibert's attendance was sporadic, at best.  (A11)  Seibert missed four days of work in January and eleven days of work in April.

5

(A11)  In May 2005, Seibert requested a leave of absence for her depression, which Lutron granted.  (A11)  Seibert was on leave of absence due to her depression from May 16, 2005 through October 6, 2005.  (A11)

When Seibert returned from leave in October, she continued to miss days from work.  Seibert missed four days of work in November, and four more days of work in December 2005.  (A11)  None of the days that Seibert missed in November and December were related to her depression.  (A11; A111)

The last documentation Lutron received regarding Seibert's alleged disability was from her family physician, Dr. Liaw, dated January 13, 2006.  (A11-A12, A29-A33)  Therein, Dr. Liaw stated that Seibert suffered from "*intermittent episodes of depression*" which prevented her from working during those episodes; she was "*not currently incapacitated*," as of January 13, 2006; and she "*may be absent 2 or 3 days once a month*."  (A11-A12, A29-A33) (emphasis added).  Dr. Liaw stated that the probable duration of Seibert's condition was "*unknown*," and he did not indicate for how long Seibert may be absent 2 to 3 days per month.  (A11-A12; A29-A33) (emphasis added).

While Dr. Liaw indicated that Plaintiff may be absent 2 to 3 days per month, between January and June 2006, Plaintiff missed work an average of 12 days per month.  (A12)  In total, during this six-month period, Seibert missed more than 70 days of work.  (A12)  Seibert acknowledges that she stopped taking anti-

depressants in February 2006 and stopped seeing her therapist in June of 2006; and she has not resumed either medication or counseling since these respective dates. (A107-A108)

### D.    Seibert's Maternity Leave of Absence July 25 to October 6, 2006

After missing 70 days of work in the first half of the year, in July 2006, Seibert requested and was granted a maternity leave of absence from July 25, 2006 to October 6, 2006. (A114) Seibert delivered twins on August 13, 2006. (A115) On September 28, 2006, Seibert called human resource specialist Richard Wagner ("Wagner") and informed him she had been released by her doctor to return to work on October 2, 2006 without restrictions. (A12-A13; A116) Wagner advised Seibert that upon her return to Lutron, she would need to attend work on a regular basis and that he would meet with her in person on the morning of her return. (A116-A117) Seibert acknowledged during that call that she needed to improve her attendance, and she understood that she would be required to maintain good attendance upon her return to work. (A117) Wagner met with Seibert in person on October 2, 2006, and again impressed upon her that regular attendance at work was an essential function of her position. (A117-A118)

7

E.   **Seibert's Attendance October 2006 Through March 2007**

Upon her return from maternity leave, Seibert worked in finished goods inventory accuracy from October until the end of November 2006, and raw materials inventory accuracy from February to March 2007. (A124-A125)

The Inventory Accuracy Team is responsible for reconciling discrepancies in the inventory of raw materials. (A15)  The operation at Meadows I and Meadows II, including the Inventory Accuracy Team, was managed by Operations Leader Scott Reinert ("Reinert"), who has been employed with Lutron for 21 years. (A15)

Seibert was responsible for troubleshooting problems in the audit of raw materials. (A15).  Her duties included "cycle-counting." (A15)  Cycle-counting is a crucial function that must be performed on a daily basis and cannot await an employee's return to work from absence. (A15)  When Seibert missed work, her co-workers and supervisors had to fill-in to pick up the slack. (A15)

Seibert continued to regularly miss work. (A13)  On October 18, 2006, Seibert missed work because one of her children was sick. (A119)  On November 15, 2006, Seibert left work after working only half a day. (A121)  Seibert missed work again on November 20, 2006 because one of her children was sick, and left work early again on November 27, 2006 to take her child to the doctor. (A120)  She missed work again on December 19, 2006. (A122)  Between January and March 2007, Seibert missed seven full days and three half days of work. (A123)

8

Seibert testified that the reason for "almost all" of her absences during this period, was that she needed to take her children to various appointments and/or was unable to arrange daycare. (A123) She admits that none of her absences during this period were related to her depression or pregnancy. (A124)

In January 2007, Seibert either missed work or left work early four (4) times. (A15-A16) On January 3, 2007, Seibert worked 4 hours and recorded the remaining 4 hours as vacation. (A15-A16) She missed an entire day on January 19, and again on January 26, 2007. (A15-A16) Seibert recorded both days as "vacation," even though she failed to give any prior notice of her intended absence. (A15-A16) On January 29, 2007, Seibert worked 4 hours and recorded the remaining 4 hours as vacation. (A15-A16)

Seibert missed 5½ days between February and March 2007. (A15-A16) Seibert missed work on February 14, 2007, which she claimed as "vacation," despite failing to obtain prior approval. (A15-A16) On February 21, Seibert left work after 4 hours and claimed the remainder of the day as "vacation." (A15-A16) Seibert missed work on February 23, which she claimed as "vacation," despite failing to give advance notice of her absence. (A15-A16)

Seibert missed three more days of work in March, including March 13, March 19 and March 20. In each instance, Seibert claimed a "vacation" day, without giving any advance notice of her intended absence. (A16)

9

**F.     Seibert Resigned Her Employment With Lutron**.

Reinert reviewed Seibert's performance on March 23, 2007. (A16; A37)

The review noted that Seibert's chronic absenteeism had placed a strain on her

department and that her unplanned absences had disrupted operations:

> Heather's performance since joining the inventory
> accuracy team has been inconsistent. Overall, her level
> of contributions fall short of expectation based on her
> level of experience and capabilities. The main area of
> concern is her attendance.
>
> Over the last quarter of 2006 and the first quarter of
> 2007, Heather has missed 12 days, most of which were
> unplanned/unscheduled. This is a huge issue/concern as
> it is extremely difficult to operate the MW2 raw material
> warehouse while driving to improve the overall accuracy
> of the facility when key individuals are not reliable.
> Because she has missed so many days, she has not been
> able to gain the training/experience in this role, which
> would enable her to contribute at the desired levels.
> Additionally, her unplanned days off have negatively
> impacted the overall day-to-day operation as it has
> required us to cover her activities with folks outside the
> inventory team in order to ensure the operation runs
> effectively, and we are able to take care of our customers.

Reinert and Wagner met with Seibert on March 23, 2007 to discuss her

review. (A17; A39) Wagner informed Seibert that because of her continued poor

attendance, the Company would terminate her employment. (A17; A39)

However, Wagner offered Seibert an opportunity to resign her employment, which

would allow the Company to pay her for 10 days of work in lieu of notice, plus an

additional two weeks pay, to continue Seibert's health care coverage until May 1,

2007, and allow her to apply for unemployment compensation without objection.

(A17; A39)  Seibert elected to resign her employment at Lutron.  (A17; A38-A39)

## G.    Seibert's Claims of Pregnancy and Disability Discrimination

At her deposition, Seibert acknowledged that Wagner was *legitimately* concerned about her poor attendance.  (A128)  Seibert admits that none of her managers or supervisors made any negative comments or discriminatory remarks about her disability.  (A130-A131)  Seibert also admits that Lutron did not treat her differently than any other employees.  (A132)  Seibert's claim that Lutron discriminated against her is based on her belief that her unplanned absences following her return from maternity leave should have been excused because she designated them as "vacation" days.  (A128)

On or about July 20, 2007, Seibert filed a charge of discrimination with the EEOC in which she alleged discrimination on the basis of sex and disability. (A40-A41)  As part of the charge filing process, Seibert was required to complete an EEOC questionnaire form.  (A42-A55; A82)  The EEOC questionnaire form included a 4-page form, signed by Seibert, titled "ADA INTAKE QUESTIONNAIRE."  (A56-A59)  Seibert indicated on the ADA Questionnaire that her disabilities included depression and high risk pregnancy.  She further stated on the questionnaire that "*[b]oth conditions were temporary.  Depression*

*was diagnosed in May 2005. The pregnancy complications began in February*

*2006."* (A56-A59)

Furthermore, Question 12 of the ADA Questionnaire instructed,

> If you are claiming that you are not disabled, but
> Respondent incorrectly "perceived" you to have a
> disability, describe what disability you are perceived as
> having.    In addition, indicate which Respondent
> representative(s), by name and job title, perceive you to
> have this disability and what makes you believe that
> those persons have this perception.

Plaintiff's response to Question 12 was *"Not Applicable."* (A56-A59)

## H.    Seibert's Sex Discrimination Claim

Seibert also alleges in her Complaint that Lutron discriminated against her

"by telling her upon return from approved disability leave, that her old job was

being phased out, only to direct her to train a male replacement and terminate her

employment." As a participant in Lutron's Technical Assistant Development

Program, part of the larger Employee Development Program, Seibert was cross-

trained in different positions. (A71) Seibert and the other participants of the

Employee Development Program routinely rotated from one position to another.

(A75)

When Seibert first began working at Lutron, she worked in the packing area,

where she packaged dimmers and controls. (A66) Seibert's first position as an

Associate Technical Assistant involved rework and conversions. (A67) Her job

responsibility was to open returns. (A67) Seibert's next position was in the clamshell packing area, where she packed dimmers and switches. (A68) Seibert was next assigned to the Harrier conversion area, where she made and tested Harrier boards used for lighting panels. (A68) As Seibert rotated from one position into another, she received training from the employee rotating out of the position. (A69)

The position that Seibert held before she began her maternity leave was the documentation specialist position. (A76) In this position, Seibert reported to Steve Plesko. (A77) Seibert's primary duties and responsibilities in this position included preparing paperwork for the engineering group, creating new part numbers, creating new product names, and completing paperwork for the platform. (A76-A77)

When Seibert returned from maternity leave, she rotated from the document specialist position into another position at Lutron's Brookdale facility. (A14; A80) There was no diminution in Seibert's title or compensation when she rotated into her new position at Brookdale. (A80-A81) Seibert's rotation from the documentation specialist position to the inventory control position was a normal part of her cross-training. (A81).

In or about January 2007, Matt Hoffman, another participant in Lutron's Employee Development Program, rotated into the documentation specialist role as

part of his regular cross-training. (A15; A79-A80) Seibert was asked to train Hoffman in her former position, which is often the case when participants in the Employee Development Program rotate from one position to another. (A15) In or about September 2007, Jennifer Hoch, another participant in the Employee Development Program, rotated into the documentation specialist position as part of her cross-training. (A15) Hoffman trained Hoch before he rotated into his next position. (A15)

## V.    SUMMARY OF ARGUMENT

The district court properly granted Lutron's motion for summary judgment, and Seibert has not pointed to any reason why the district court's decision should be reversed by this Court.

Seibert does not allege that the district court committed an error of law. Rather, she alleges that the district court should have found a disputed issue of fact as to whether she was disabled under the ADA. However, Seibert has failed to point to any record evidence in support of this assertion. To the contrary, the record evidence, including Seibert's own statements, establishes that Seibert was not disabled or regarded as disabled and did not have a record of a disability under the ADA. Furthermore, Seibert did not exhaust administrative remedies as to her perceived disability claim under the ADA. Therefore, the district court properly

14

granted Lutron's motion for summary judgment because Seibert could not establish a prima facie case of disability discrimination.

Likewise, Seibert does not allege that the district court committed an error of law with respect to its conclusion that Seibert failed to demonstrate that Lutron's legitimate, non-discriminatory reasons for its actions were a pretext for disability, sex or pregnancy discrimination. Rather, she attempts to allege that there was a disputed issue of material fact. However, Seibert again fails to point to any record evidence establishing such a disputed issue. Rather, the record evidence reveals that Seibert was laterally transferred as part of Lutron's Employee Development Program and was eventually separated from her employment after numerous absences unrelated to her alleged disabilities. Thus, the undisputed record evidence reveals no evidence of pretext and, thus, the district court properly granted Lutron's motion for summary judgment.

## VI.    COUNTER-STATEMENT OF STANDARD OF REVIEW

In reviewing the district court's grant of summary judgment, this Court applies the same standards as the district court applied. *Estate of Oliva*, 604 F.3d 788, 797 (3rd Cir. 2010); *Makky v. Chertoff*, 541 F.3d 205, 211 (3rd Cir. 2008). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which the party will bear the burden of proof at trial. Fed. R.

Civ. P. 56(c).

## VII.    ARGUMENT

### A.    Even Giving All Reasonable Inferences To Seibert, The District Court Correctly Determined That Seibert Is Not Disabled Within The Meaning Of The ADA.

#### 1.    The record evidence fails to establish that Seibert was disabled within the meaning of the ADA.

The district court properly found that Seibert was not disabled within the

meaning of the ADA and, therefore, failed to establish a prima facie case of

disability discrimination. In this appeal, Seibert has not pointed to any record

evidence from which the district court could have drawn a reasonable inference

that Seibert was disabled within the meaning of the ADA.[3] To the contrary, the

---

[3] Because the alleged discriminatory acts in this case occurred prior to January 1, 2009, the district court applied the provisions of the ADA as they existed prior to the passage of the ADA Amendments Act of 2008 ("ADAAA"). (District Court Opinion fn. 4). Seibert asserts in this appeal, without any citation, that the ADAAA should apply retroactively. (Appellee Br. at 11, n. 28). However, in general, courts must not retroactively apply legislation if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S. Ct. 1483 (1994). Therefore, this Court should join its sister circuits in holding that the ADAAA is not retroactive and, therefore, inapplicable to the case sub judice. *See, e.g., Lytes v. D.C. Water & Sewer Auth.*, 572 F.3d 936, 941 (D.C. Cir. 2009); *Fredricksen v. United Parcel Serv. Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009); *Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 565-67 (6th Cir. 2009); *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009).

record evidence, viewed in the light most favorable to Seibert, demonstrates that

Seibert's conditions did not rise to the level of an impairment which substantially

limited her in a major life activity and, therefore, did not constitute a disability

within the meaning of the ADA. Seibert's failure to demonstrate that she was

disabled within the meaning of the ADA is fatal to her claim and grounds for

granting summary judgment. *See, e.g., Murphy v. United Parcel Serv., Inc.*, 527

U.S. 516, 119 S. Ct. 2133 (1999) (affirming grant of summary judgment where

plaintiff was not substantially limited in a major life activity).

    To establish a prima facie case of disability discrimination, it was Seibert's

burden to demonstrate that she is disabled within the meaning of the ADA.[4]

*Shaner v. Synthes*, 204 F.3d 494 (3rd Cir. 2000). The threshold to do so is high.

*See Mascioli v. Arby's Rest. Group, Inc.*, 610 F. Supp. 2d 419 (W.D. Pa. 2009);

*Reifer v. Colonial Intermediate Unit 20*, 462 F. Supp. 2d 621, 633-34 (M.D. Pa.

2004). Under the statute, an individual is defined as disabled if she has "(A) a

physical or mental impairment that substantially limits one or more of the major

life activities of such individual; (B) a record of such an impairment; or (C) [is]

regarded as having such an impairment." 42 U.S.C. §12101(2). However, a

temporary, transient, or nonpermanent impairment is not a disability that

---

[4] Because the parties do not dispute that the district court properly applied the
familiar Mc-Donnell Douglas burden shifting analysis, Lutron does not set forth
the analysis at length herein.

substantially limits a major life activity. *See Rineheimer v. Cemcolift, Inc.*, 292

F.3d 375, 380 (3d Cir. 2002); *McDonald v. Commonwealth*, 62 F.3d 92, 94-97 (3d

Cir. 1995). To rise to the level of a disability under the ADA, the impairment's

impact must be permanent or long-term. *Toyota Motor Mfg., Ky., Inc. v. Williams*,

534 U.S. 184, 198, 122 S. Ct. 681 (2002); *Reifer*, 462 F. Supp. 2d at 633 ("As a

matter of law, a transient, nonpermanent condition, or a temporary non-chronic

condition of short duration...falls short of substantially limiting an individual in a

major life activity.").

Seibert first argues that the district court erred because it should have drawn

the inference that Seibert was disabled at the time of her termination in March

2007 because she was diagnosed with depression almost two years earlier. As a

threshold matter, Seibert misstates and exaggerates the law on inferences.[5]  A

court need not grant all inferences in the non-moving party's favor; rather it must

grant all ***reasonable*** inferences. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255,

---

[5] Seibert's reference to *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265
(3d Cir. 2001) is misplaced. As Seibert noted, *Abramson* addressed inferences in
terms of discriminatory animus during the pretext analysis, where the employer is
unlikely to provide direct evidence of discriminatory intent. Unlike the pretext
stage analysis in *Abramson*, in this case, there is clear record evidence addressing
Seibert's medical condition, including testimony from Seibert herself, who had
every opportunity and every incentive to provide the district court during discovery
with a complete recitation of her alleged disability.

106 S. Ct. 2505 (1986). Inferences which lack any support in the record evidence are not reasonable.

Seibert's "inferences" argument is unsupported by the record evidence. Seibert points to no record evidence that she continued to be impaired by depression after July 2006. Rather, Seibert points only to evidence that in January 2005, she suffered from depression that made it impossible to work, and which, according to Dr. Liaw, would cause her to miss work for an indeterminate period of time. Therefore, Seibert posits, the district court should have inferred that she suffered from a substantially limiting impairment 18 months later in July 2006. This evidence, and the inferences which may reasonably be drawn from it, are insufficient to demonstrate that Seibert was substantially limited by an impairment at the time of her termination.[6] Such argument ignores both the lack of any evidence demonstrating that the depression continued to affect Seibert after July 2006 and the overwhelming record evidence which shows, to the contrary, that after July 2006, Seibert was no longer affected by the depression.

The only evidence Seibert points to in establishing an ongoing impairment from her depression is her absences from work. Seibert first argues that her

---

[6] Indeed, if all a plaintiff need show is that at some point he or she suffered from an impairment which may continue for an indefinite period of time, there would be no need for the wide body of case law addressing temporary, transient and non-permanent conditions.

absences from work were connected to her depression through her Complaint.

(Appellee Br. at 12)  However, at the summary judgment stage, a plaintiff need

point to record evidence, and not merely the allegations of her pleadings.  *See* Fed.

R. Civ. P. 56(e)(2) ("an opposing party may not rely merely on allegations or

denials in its own pleading; rather, the response [to a motion for summary

judgment] must...set out specific facts showing a genuine issue for trial");

*Matsushita v Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct.

1348 (1986) (noting that nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts); *Celotex Corp. v. Catrett,*

477 U.S. 317, 323-24, 106 S. Ct. 2548 (1986).  In this regard, Seibert also argues

that her absences after July 2006 should be evidence of her ongoing impairment

because Dr. Liaw previously stated that she would miss work 2-3 days per month

for an indeterminate period of time due to the depression.[7]  However, it is clear

that there came a point where Seibert was no longer absent from work due to

depression.  Seibert repeatedly acknowledged that her continued absences after her

maternity leave were not related to her depression, but rather to her childcare needs

or sinusitis.  (A110-A111; A123-A124)  Therefore, it is not a reasonable inference

---

[7] Seibert refers to a "fact dispute" based on Dr. Liaw's statement that Seibert would miss 2-3 days of work per month, and the fact that Seibert actually missed 12 days per month.  (Appellee Br. at 12).  There is no dispute over what Dr. Liaw's report stated, nor any dispute about the number of days Seibert actually missed.  Thus, there is no factual dispute for a jury to resolve.

from Seibert's absences that she continued to suffer from or be substantially limited by her depression.

Furthermore, the record evidence overwhelmingly demonstrates that Seibert's depression was of a temporary duration, which had run its course. Seibert admits that her depression was situational in that it was based on various stressful circumstances in her life existing at the time it began—her fiancé's increased alcohol consumption, the stress of planning a wedding, financial problems she was having, and her grandfather's illness. (A101-A106) Likewise, Seibert acknowledges that she stopped taking anti-depressants in February 2006 and stopped seeing her therapist in June of 2006; and she has not resumed either medication or counseling since these respective dates. (A107-A108) Indeed, in July 2007, Seibert even went so far as to report to the EEOC of her depression and pregnancy that "both conditions were temporary." (A56-A59)

Similarly, the record evidence also evidences that her depression (if it ever did) no longer substantially limits her in any major life activities. At the time of her deposition, Seibert was 31 years old and the primary caregiver of her two children, Ai. and Ad., who at the time were both 2 ½ years old. (A60-A61) Seibert acknowledged that she is able to clean her house, cook meals for her family, do the grocery shopping, drive her children to various appointments and activities, play with and read to her children, pay the family bills, and bathe and

dress her children without any assistance.  (Seibert Dep. A62-A64)  Seibert

admitted that her ability to do these activities is not impaired by any condition.

(A64)

Based on the foregoing, it was proper for the district court to conclude that

Seibert was not disabled within the meaning of the ADA and grant summary

judgment, because "[n]o reasonable juror could conclude from the record evidence

that Ms. Seibert's impairment was permanent or would have a long-term impact."

*See Maslanka v. Johnson & Johnson, Inc.*, 305 Fed. Appx. 848, 852 (3rd Cir.

2008); *Ashton v. Am. Tel. & Tel. Co.*, 225 Fed. Appx. 61 (3rd Cir. 2007) (affirming

summary judgment where plaintiff was unable to show her ability to think was

substantially limited on a long term basis rather than being of limited duration, and

her "impairment appeared to be situational."); *Rinehimer*, 292 F.3d at 380-81; *see

also Sanders v. Anderson Prods., Inc.,* 91 F.3d 1351 (9th Cir. 2006) (affirming

summary judgment where plaintiff suffered a single episode of a temporary

condition with no residual effects); *Ogborn v. United Food & Commercial

Workers Union*, 305 F.3d 763, 767 (7th Cir. 2002) ("isolated bouts of depression"

do not constitute an actual disability under the ADA).

2. The record evidence fails to establish that Seibert had a record of an impairment under the ADA.

Seibert argues for the first time on appeal that although the district court found that she failed to present evidence of an impairment that substantially limits a major life activity, she nevertheless demonstrated "a record of such an impairment."[8]  Seibert's claim under 42 U.S.C. §12101(2)(B) must fail for the same reason that her claim of actual disability fails.  "This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment." *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 645 (2d Cir. 1998) (quoting EEOC Guidelines, 29 C.F.R. pt. 1630 App. §1630.2(k)).  "The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities." *Id.*  While Seibert arguably may have had a record of an impairment for a period ending no later than July 2006, her impairment did not substantially limit one or more of her major life activities because it was a temporary, transient condition.

---

[8] Such new arguments should not be considered by the Court.  This Court has held that "a trial court should not be reversed on grounds that were never urged or argued in the court below." *Fletcher v. Lucent Tech., Inc.*, 207 Fed. Appx. 135, 139 (3d Cir. 2006) (citing *Caisson Corp. v. Ingersoll-Rand Co.*, 622 F.2d 672, 680 (3d Cir. 1980)).  "Indeed, on appeal of an order granting summary judgment, an appellant generally may not advance new theories or raise new issues in order to secure a reversal of the lower court's determination." *Id.* (internal quotation omitted).

**B.    The District Court Properly Dismissed Seibert's "Regarded As" Disability Claim Because Seibert Failed to Exhaust Administrative Remedies and There Is No Record Evidence Seibert Was "Regarded As" Disabled.**

Seibert next argues that the district court erred when it dismissed her "regarded as" disability claim.

As a threshold matter, the district court properly dismissed Seibert's "regarded as" claim for failure to exhaust administrative remedies. Before initiating a lawsuit, a plaintiff alleging disability discrimination must first exhaust her administrative remedies by filing charge of discrimination. *Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir. 1984). "[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Atkinson v. Lafayette Coll.*, 460 F.3d 44, 453 (3d Cir. 2006) (internal quotation omitted).

Seibert now argues on appeal that the EEOC should have investigated her charge as a "regarded as" disability claim. First, the language identified by Seibert in her EEOC charge as evidencing perceived disability discrimination in no way supports the specific elements of that claim separate and apart from her discrimination claim based on her alleged actual disabilities. Moreover, the documents demonstrate that Seibert expressly informed the EEOC that she was not pursuing a perceived disability claim. (A56-A59) Lest there by any question

24

about what Seibert meant by this response, at deposition Seibert contradicted the

very allegations she presses in this appeal.

> Q.    Question number 12 on the next page asks "If you
> are claiming that you're not disabled, but respondent
> incorrectly perceived you to have a disability, describe
> what disability you are perceived as having," and you
> wrote not applicable; is that correct?
>
> A.    Yes.
>
> Q.    You're not claiming that Lutron mistakenly
> perceived you to be disabled when, in fact, you're not,
> correct?
>
> A.    Correct.

(A131)  Based on these representations, the district court properly concluded that

Seibert failed to exhaust her administrative remedies as to a "regarded as"

disability claim.

Assuming, *arguendo*, that Seibert had exhausted her perceived disability

claim at the EEOC, the record is entirely devoid of any evidence that shows Lutron

either mistakenly believed Seibert had a substantially limiting impairment that she

did not have or that it believed her actual, non-limiting impairment substantially

limited a major life activity.  *See Sutton v. United Airlines, Inc.* 527 U.S. 471, 489,

119 S. Ct. 2139 (1999); *Cassimy v. Bd. of Educ. of the Rockford Public Schs.*, 461

F.3d 932 (7th Cir. 2006).  In the context of perceiving an individual to be

substantially limited in her ability to work, a plaintiff must show that the employer

believed her unable to work a broad class of jobs. *Eshelman v. Agere Sys., Inc.,*

554 F.3d 426, 435 (3d Cir. 2009). It is not sufficient simply to show that Lutron was aware of Seibert's past condition as "the mere fact...that an employer is aware of an employee's impairment is insufficient to demonstrate...that the employer regarded the employee as disabled." *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1995).

Here, Seibert expressly denied that Lutron mistakenly believed her to be substantially limited when in fact she was not. (A131) Moreover, Seibert has failed to identify any facts which suggest Lutron "held exaggerated views about the seriousness of [her] illness." *Ogborn,* 305 F.3d at 768. Likewise, there is no evidence nor any basis for a reasonable inference that Lutron perceived Seibert to be unable to work in a particular class or broad range of jobs. *See Eshelman,* 554 F.3d at 435.

Therefore, the district court properly determined that Seibert was neither disabled nor perceived to be disabled under the ADA, and summary judgment should be affirmed.

**C.    The District Court Properly Concluded That Seibert Failed To Establish A Prima Facie Case Of Discrimination And That There Is No Evidence That Defendant's Proffered Reasons Were A Pretext For Disability, Sex Or Pregnancy Discrimination.**

> 1.    The district court properly concluded that Seibert did not suffer an adverse employment action and there was no evidence of pretext for discrimination with respect to Seibert's reassignment upon return from maternity leave.

In support of her claims for sex and/or pregnancy discrimination, Seibert alleges that in or about November 2006, after her return from maternity leave, she was reassigned to another position and required to train a male employee for the position she held immediately prior to her maternity leave. However, the district court properly concluded that that the transfer was not an adverse employment action and Seibert cannot show Lutron's proffered reasons for its actions were a pretext for discrimination.[9]

---

[9] Because there is no allegation that the district court committed an error of law with respect to the pretext analysis, Lutron sets forth the standard for proving pretext only briefly herein. The Third Circuit has stated that "our standard for proving pretext...places a difficult burden on the plaintiff." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (internal quotation omitted). In the summary judgment context, in order to defeat the employer's motion, the employee must provide evidence, "direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perksie*, 32 F.3d 759, 764 (3d Cir. 2003). In doing so, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'"

To establish a prima facie case of discrimination, an "adverse employment action" is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey,* 269 F.3d 251, 263 (3d Cir. 2001). It is well-established that a purely lateral transfer in position alone, without more, does not rise to the level of an adverse employment action. *See Scott v. N.J.,* 143 Fed. Appx. 443 (3d Cir. 2005) (finding no adverse employment action where transfers did not result in reduction in pay or status); *Boykins v. Lucent Tech.,* 78 F. Supp. 2d 402, 415 (E.D. Pa. 2000); *see also Williams v. Bristol-Meyers Squibb Co.,* 85 F.2d 270, 274 (7th Cir. 1996). Here, Seibert cannot establish she suffered an adverse employment action because she admits there was no reduction in her pay or other changes to the terms and conditions of her employment in connection with the reassignment. Indeed, it is telling that Seibert herself did not view her reassignment as a demotion. (A80-A81)

In addition to the fact that there was no diminution in her title or compensation, Seibert admits that her rotation from the documentation specialist position to the inventory control position occurred as a regular component of her cross-training, and similarly affected other employees.

---

*Id.* at 765 (quoting *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993)).

Q.    Did that happen frequently that…you were rotated to different positions?

A.    Yes.

Q.    And is it true for…the other participants in the development program?

A.    Yes.

Q.    So there's nothing unusual about being rotated from one position to another; that's an ordinary course of business?

A.    Yes.

*    *    *

Q.    So essentially you're being moved from the documentation specialist position to the inventory control position as part of the ongoing cross-training that you were receiving, correct?

A.    I believe so, yes.

(A79-A81)  (*See also* A75) (part of Matt Hoffman's cross-training to rotate into the document specialist position).

Notwithstanding the foregoing, Seibert attempts to argue on appeal that her reassignment from the document specialist position was an adverse employment action by reference to this Court's holding in *Torre v. Casio, Inc.*, 42 F.3d 825 (1994), for the proposition that a transfer, even without loss of pay or benefits, followed by a separation can constitute an adverse action. However, the facts in *Torre* are readily distinguished. First, the plaintiff in *Torre* survived summary judgment by demonstrating a material fact issue as to whether he had been

29

transferred to a dead-end job that had effectively been eliminated before he was

transferred to it.  There is no comparable allegation here.  Second, the plaintiff in

*Torre* presented evidence from which a reasonable factfinder could find animus

above and beyond the mere transfer and subsequent termination alone.[10]  Thus,

---

10 Torre alleged that his general manager Gary Hand was driven to replace him
with a younger manager and presented evidence that Hand had an animus toward
older employees, ultimately leading Casio to transfer Torre, as a "subterfuge," to
the dead-end position of "product marketing manager."  The plaintiff's evidence
included the following facts from which a jury could conclude that Casio's
proffered reasons for the transfer were not worthy of credence:

- Barry Collins, Torre's direct supervisor and subordinate to Hand, was
  twice instructed to fire Torre.  Collins told Connie Herrel, whose
  duties included human resources and legal affairs, that Torre would
  sue for age discrimination if he was terminated, and Herrel said that
  she would take care of the problem.  Herrel then created a new
  position of product marketing manager and had Torre transferred to
  that position.

- When Torre was terminated in the reduction in force, other, similarly-
  situated but younger employees were retained by Casio.

- Collins testified that when he met with Hand to discuss Torre's
  transfer, Hand "said that he wanted to put [Torre] in a box," and
  "went on to say that he wanted to put [Torre] under a microscope, [to]
  wrap him so tight that he would have to screw up."

- When Hand first became Torre's manager, he sought to replace Torre
  with a younger manager.  Furthermore, a recruiter provided an
  affidavit stating Hand told him that one suggested candidate was
  unacceptable because he was too old, and that he did not want to fill
  Torre's position with anyone who was over age 35.

Torre received a message from Hand, including "did you forget or are you getting
too old, you senile bastard?"  As discussed herein, there is no comparable direct or
circumstantial evidence of pretext in the instant case.

the plaintiff in *Torre* presented additional evidence of adverse action and pretext that is entirely absent here.

> 2. The district court properly concluded that Seibert failed to present evidence that Lutron's proffered reason for her separation was a pretext for disability discrimination.

Seibert next posits that the district court erred by holding that even if Seibert had produced sufficient evidence to establish she was disabled within the meaning of the ADA, her disability discrimination claim would still fail because there is absolutely no evidence that Lutron's stated reason for her termination—her excessive absenteeism—was pretextual. Seibert's position is without merit. Seibert has failed to point to any material disputed fact sufficient to defeat summary judgment or any record evidence from which a reasonable factfinder could find an inference of discrimination.

Seibert does not challenge that Lutron has proffered a non-discriminatory reason for her separation - that she failed to meet its standards and expectations for attendance. Rather, Seibert alleges, "I believe that I was discriminated against because I was out with depression and I had to take a lot of time off for my maternity leave and I took time off to take my children to the doctor. I think because of all the time that I missed, that that's why they got rid of me." (A131) As a threshold matter, it is undisputed that there is no direct evidence of

discriminatory animus by anyone at Lutron. Seibert admits that none of her managers or supervisors made any negative comments or discriminatory remarks about her disability. (A130-A131) Rather, Seibert seeks to establish pretext by circumstantial, indirect evidence.

Seibert first argues that Lutron's stated reason for requesting her separation is pretextual because she "was aware that it was the general practice of other employees of the (sic) Lutron to use vacation days in lieu of using sick days." However, Seibert fails to point to any record evidence in support of this assertion. At the summary judgment stage, a plaintiff must point to such evidence and her failure to do so is significant. *Langley v. Merck & Co.,* 186 Fed. Appx. 258, 261 (3d Cir. 2006) (plaintiff cannot create a genuine issue of material fact by testifying as to his beliefs, rather he must show that his beliefs are based on evidence). Furthermore, Seibert admitted that she had no personal knowledge of Lutron's permitting other employees to take unplanned days off from work and then mark them as a vacation days.

> Q.   Are you aware of any specific non-disabled employees who were treated different than you?
>
> A.   No.

(A132) Likewise, even if the evidence viewed in the light most favorable to Seibert established that she believed she was permitted to miss work provided she use her vacation time, such subjective belief is insufficient to defeat Lutron's

motion for summary judgment. There is no dispute that Seibert was, in fact, absent on the days she stated, and that she attempted to mark such days as vacation.

Siebert's attempts to point to evidence of prior positive reviews of her employment are likewise unavailing. The mere fact that an employee disagrees with her employer's assessments of her performance or can point to past positive reviews cannot, standing on its own, show that her employer's asserted reason for her termination was pretextual. *See Bernhard v. Nexstar Broad. Group, Inc.*, 146 Fed. Appx. 582, 586 (3rd Cir. 2005); *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3rd Cir. 1991), *overruled on other grounds, St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742 (1993); *Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 483 (D.N.J. 1997).

In an apparent attempt to demonstrate pretext, Seibert next questions "why any manager of a large business would transfer someone using her vacation days for children's medical appointments to a department with a crucial function that must be performed on a daily basis." (Appellant's Br. at 21). Importantly, such question in no way implicates Seibert's sex, disability or any other protected class.

Similarly, Seibert questions why Lutron would transfer her to a position where attendance is critical when it knows she has a history of absences. However, the undisputed evidence demonstrates that at this time, Seibert was not expected to be out more than 2-3 days per month, a far cry from the 12 days per

month she was actually absent. Moreover, it is not enough for Seibert to show that Lutron's decision was unfair or unwise. Indeed, it is well-established that the role of the Court is limited to determining pretext, and it cannot second guess an employer's business judgment. *See Kautz*, 412 F.3d at 467 (citing *Healy v. New York Life Ins. Co.,* 860 F.2d 1209, 1216 (3d Cir.1988) ("[O]ur inquiry must concern pretext, and is not an independent assessment of how we might evaluate and treat a loyal employee.")). Rather, Seibert must point to evidence suggestive of discrimination. *Maslanka,* 305 Fed. Appx. at 853 (3rd Cir. 2008); *see also Matsushita,* 475 U.S. at 587; *Celotex Corp.,* 477 U.S. at 323-24. After an ample opportunity for discovery, Seibert has failed to do so.

## VIII.    CONCLUSION

Seibert bears the ultimate burden of proving that Lutron's actions were motivated by discrimination. Seibert cannot meet her burden with only suspicion and speculation and vague references to inferences, or by asserting facts which contradict her own testimony at deposition. Plaintiff has failed to establish that the district court made any error of law in granting Lutron's motion for summary judgment.

Therefore, this Court should affirm the Order and Judgment of the district court and grant Lutron such other relief as is just and proper.

Respectfully submitted,

/s/ Elizabeth A. Malloy
Elizabeth A. Malloy
BUCHANAN INGERSOLL & ROONEY PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555

Peter A. Romero
FRANK & ASSOCIATES, PC
500 Bi-County Blvd., 112N
Farmingdale, NY 11735

*Attorneys For Appellee Lutron Electronics*

Dated:  August 4, 2010

## CERTIFICATION OF BAR MEMBERSHIP

I HEREBY CERTIFY that I am admitted to practice before the United

States Court of Appeals for the Third Circuit, and that I am a member of the bar of

this Court in good standing.

/s/ Elizabeth A. Malloy
Elizabeth A. Malloy

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, TYPE STYLE REQUIREMENTS AND ELECTRONIC FILING REQUIREMENTS

1. This brief complies with the type-volume limitation because this brief contains 7,993 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2008 in 14-point Times New Roman font.

3. The text of the PDF format electronic brief is identical to the text of the filed paper copies.

4. A virus detection program, Symantec AntiVirus Corporate Edition, 10.1.7.7000 scan engine 101.1.0.75, virus detection file version 8/3/2010 rev. 4, was run on the PDF format electronic brief prior to filing.


Dated: August 4, 2010                    */s/ Elizabeth A. Malloy*_____
                                         Elizabeth A. Malloy

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused an electronic PDF version of the

foregoing Brief to be electronically filed via the Court of Appeals' Electronic Case

Filing (ECF) system and that I caused ten (10) hard copies of the Brief to be sent

via hand delivery, in accordance with L.A.R. 31.1, to the Clerk of the Court on

August 4, 2010 at the following address:

> Office of the Clerk
> United States Court of Appeals for the Third Circuit
> 21400 U.S. Courthouse
> 601 Market Street
> Philadelphia, PA 19106-1790

I further certify that on this day I caused the foregoing Brief to be served

electronically by the ECF Notice of Docket Activity upon the following counsel,

who is a Filing User, as well as by First Class Mail, postage prepaid, addressed as

follows:

Edward Bigham, Esquire
621 Swede Street
Norristown, PA 19401

*Attorney for Plaintiff Heather Seibert*

Dated:  August 4, 2010          */s/ Elizabeth A. Malloy*
                                Elizabeth A. Malloy