_____

## UNITED STATES COURT OF APPEALS FOR
## THE THIRD CIRCUIT

| | | |
|---|---|---|
| **HEATHER SEIBERT** | : | **APPEAL** |
| **Appellant** | : | |
| | : | |
| **v.** | : | **No.  10-1091** |
| | : | |
| | : | |
| **LUTRON ELECTRONICS** | : | |
| **Appellee** | : | |
| | : | |

_____


## <u>CORRECTED BRIEF OF APPELLANT HEATHER SEIBERT</u>


This corrected brief is submitted in support of the Appeal taken from the Order of the Honorable Lawrence F. Stengel, United States District Court for the Eastern District of Pennsylvania, No. 08-5139.

Edward Bigham, Esquire
621 Swede Street
Norristown, PA  19401
(610) 277-4868
(610) 277-5328 Fax
Counsel for Appellant Heather Seibert

**Edward Bigham**
**#79321**
**621 Swede Street**
**Norristown, PA  19401**
**610. 277. 4868**
_____

## UNITED STATES COURT OF APPEALS FOR
## THE THIRD CIRCUIT

| | | |
|---|---|---|
| **HEATHER SEIBERT** | : | **APPEAL** |
| **Appellant** | : | |
| | : | |
| **VS.** | : | **No.  10-1091** |
| | : | |
| | : | |
| **LUTRON ELECTRONICS** | : | |
| **Appellee** | : | |
| | : | |

_____

## TABLE OF CONTENTS

1.     **Table of Authorities**

2.     **Brief of Appellant Heather Seibert**

3.     **Appendix of Appellant Heather Seibert, Vols. I and II**

4.     **Certification of Bar Membership**

5.     **Combined Certification of Word Count, Identical Compliance of Briefs and Virus Check**

6.     **Certification of Service**

**Edward Bigham**
**#79321**
**621 Swede Street**
**Norristown, PA  19401**
**610.277.4868**

_____

## UNITED STATES COURT OF APPEALS FOR
## THE THIRD CIRCUIT

| | | |
|---|---|---|
| **HEATHER SEIBERT** | : | **APPEAL** |
| **Appellant** | : | |
| | : | |
| **VS.** | : | **No.  10-1091** |
| | : | |
| | : | |
| **LUTRON ELECTRONICS** | : | |
| **Appellee** | : | |
| | : | |

_____

## TABLE OF AUTHORITIES

### 1.    Statutes                                      Page

Title VII, 42 U.S.C. § 2000e *et seq*., as amended ………………………7

Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq*. ………7

American with Disabilities Act, 42 U.S.C. § 12101 *et seq*.  ……………7


### 2.    Opinions                                      Page

*St. Mary's Center v. Hicks,* 509 U.S. 502, 1113 S.Ct. 2742 (1993)    … 17

*Texas Dept. of Community Aff's v. Burdine*, 450 U.S. 248, 101 S.Ct. 1094 (1981).. 24

*United States Postal Service v. Aikens*, 460 U.S. 711,103 S.Ct. 1478 (1983) ………...29

*McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973)…………………..12

*Colwell v. Rite Aid,* 602 F.3d 495 (3d Cir. 2010)…………………..……..14

*Atkinson v. Lafayette College*, 460 F.3d 447 (3d Cir. 2006)……………..12, 16

*Abramson v. William Paterson College,* 260 F.3d 265 (3d Cir. 2006)…...13

*Fasold v. Justice,* 409 F.3d 178 (3d Cir. 2005)…………………………....24

*Williams v. PHA*, 380 F.3d 751 (3d Cir. 2004)…………………………..12, 18

*Buskirk v. Apollo Metals,* 307 F.3d 160 (3d Cir. 2002) …………………18

*Shaner v. Synthes,* 204 F.3d 494 (3d Cir. 2000)…………………………18

*Howley v. Town of Stratford,* 217 F.3d 141 (2[d] Cir. 2…………………..14

*Jones v. School Dist. Of Philadelphia,* 198 F.3d 403 (3d Cir. 1999)…...24

*Iadimarco v. Runyon,* 190 F.3d 151 (3rd Cir. 1999)……………………13

*Taylor v. Pathmark Stores,* 177 F.3d  180 (3rd Cir. 199…………………20

*Walker v. Mortham,* 158 F.3d 1177 (11th Cir. 1998)……………………24

*Ryder v. Westinghouse Electric Corp.* 128 F.3d 128 (3[d] Cir. 1997)……25

*Huff v. Varco Inc.,* 122 F.3d  374 (3rd Cir. 1999)………………………26

*Best v. Shell Oil Co.,* 107 F.3d 544 (7th Cir. 1997)………………......19, 20

*Olsen v. General Electric Astrospace,* 101 F.3d 947 (3d Cir. 1996)……18, 24

*Sheridan v. E.I. Dupont de Nemours,* 100 F.3d 1061 (3d Cir. 1996)……23

*Pritchard v. South'n Company Services,* 92 F.3d 1130 (11th Cir. 1996)…20

4

*Warren v. City of Carlsbad,* 58 F.3d 439 (9th Cir. 1995)………………24

*Torres v. Casio,* 42 F.3d 825 (3rd Cir. 1994)…………………………..22, 26

*Fuentes v. Perkasie,* 32 F.3d 759 (3d Cir. 1994)………………………25

*Merit v. South. PA Transit Auth.,* 315 F.Supp. 2d 689 (E.D.Pa.2004)…16

**Edward Bigham**
**#79321**
**621 Swede Street**
**Norristown, PA  19401**
**610.277.4868**
_____

**UNITED STATES COURT OF APPEALS FOR**
**THE THIRD CIRCUIT**

|  |  |  |
|---|---|---|
|  | : |  |
| **HEATHER SEIBERT** | : | **APPEAL** |
| **Appellant** | : |  |
|  | : |  |
| **VS.** | : | **No.  10-1091** |
|  | : |  |
|  | : |  |
| **LUTRON ELECTRONICS** | : |  |
| **Appellee** | : |  |
|  | : |  |

_____

**APPELLANT HEATHER SEIBERT'S CORRECTED BRIEF**
**IN SUPPORT OF HER APPEAL**

Appellant Heather Seibert, ("Seibert") pursuant to Federal Rule of Appellate Procedure 28, hereby submits her brief in support of her appeal.

**I.    STATEMENT OF JURISDICTION**

This court has jurisdiction pursuant to 28 U.S.C. §1291.

**II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW**

A.    Whether there was an issue of material fact as to whether Seibert had an actual disability as defined by the American with Disabilities Act;

B.    Whether there was an issue of material fact as to whether Seibert was perceived as disabled as defined by the American with Disabilities Act;

C.    Whether there was an issue of material fact as to either 1) whether Seibert suffered an adverse employment action or 2) whether Lutron Electronics' ("Lutron") professed reason for termination was pretext;

D.    Whether Trial Court's finding that there was no issue of material fact as to whether Seibert exhausted her administrative remedies was error;

E.    Whether Trial Court erred in finding lack of evidence of gender discrimination.

## III.    BRIEF STATEMENT OF THE CASE

On July 24, 2007, Seibert filed her Charge of Discrimination with the Equal Employment Opportunity Commission, with dual filing with the Pennsylvania Human Relations Commission on July 26, 2007.  Following receipt of Notice of Right to Sue, Seibert brought suit in the Court of Common Pleas in Lehigh County on October 8, 2008. Lutron filed Notice of Removal on October 28, 2008. In her complaint Seibert alleges employment discrimination based on sex, disability and pregnancy in violation of *Title VII*, 42 U.S.C.A. § 2000e *et seq*., as amended, ("Title VII"), the *Pennsylvania Human Relations Act*, 43 Pa. C.S.A. § 951 *et seq*. ("PHRA"), the American with Disabilities Act, 42 U.S.C.A. § 12101 *et seq*, and the Pregnancy Discrimination Act 42 U.S.C.A. § 2000(e)(k).

On November 30, 2009, the Honorable Lawrence F. Stengel granted Lutron's Motion for Summary Judgment and dismissed Seibert's claims and her

cause of action in its entirety.  On December 28, 2009, Seibert appealed that November 30, 2009 Order.

## IV.    STATEMENT OF FACTS

Seibert was hired by Lutron in June of 1996 in the Packing Division.  At the time of her hire, Seibert was a college student and she began temporary work for Lutron at night.[1]  During her time working for Lutron, Seibert worked all shifts.[2] Seibert began working for Lutron on a full-time bases as an associate technical assistant on or about June 16, 1997.[3] Seibert was a participant in Lutron's employee development program which provided employee cross-training in different aspects of Lutron's operations.[4]  During her time working for Lutron, Seibert received promotions to Technical Assistant in 1999, to Specialist Technical Assistant in 2001, and to Senior Technical Assistant in 2003.[5]

Seibert began to experience symptoms of depression during April of 2005, and was diagnosed with depression by Dr. Liaw in May of 2005. Seibert informed Lutron that she was experiencing depression in May of 2005 and requested a leave of absence from Lutron.  Lutron placed Seibert on a short-term disability leave of

[1] See Appedix Vol. II, at 23, Deposition of Heather Seibert ("Seibert Dep.") pp. 43, 45.
[2] *Id*. p. 45.
[3] See Appendix Vol. II, at 8, Affadivit of Richard Wagner, ("Wag. Aff.") at para. 8.
[4] See Appendix, Vol. II, Seibert Dep. p. 49.
[5] See Appendix, Vol. II Wag. Aff. ¶10.

absence from May 16, 2005 until August of 2005.  Sometime in August of 2005 Seibert was moved from Lutron's short-term disability to the Lutron's long-term disability until sometime in October 2005.[6]

During the month of July 2005 Seibert began getting treatment from Dr. Kimberly Bonner for depression.  Dr. Bonner and Seibert regularly met for approximately one year from July 2005 until June 2006.  Dr. Liaw prescribed Zoloft and Ambien to treat Seibert's depression and anxiety issues in May of 2005. Seibert remained on the medication to treat her depression until February 2006 when Seibert found out she was pregnant.[7]  Dr. Liaw sent Lutron a letter regarding Seibert's depression dated January 13, 2006.  The letter detailed Seibert's suffering "episodes of depression" which prevented her from "concentrating and impaired attention."  During the months that Seibert received treatment there were several significant events in her life; getting married, financial issues, her grandfather's stroke, and issues with her fiancée's consumption of alcohol.  All of these events greatly increased her anxiety and stress.

Plaintiff's depression was severe and caused her to miss more than 2-3 days per month that Dr. Liaw stated in his January 13, 2006 letter to Lutron.[8]

_____

[6] See Appendix, Vol. II Seibert Dep. pp. 90-91
[7] See Appendix, Vol. II Seibert Dep. pp. 101-102
[8] See Appendix, Vol. II Seibert Dep. pp. 118-119.

Seibert returned to work for Lutron at the end of her disability leave on October 6, 2006. Seibert continued to get treatment from her therapist after she returned to work for Lutron. After Seibert returned to work for Lutron she continued to miss days because of her depression.[9] In November of 2006 Seibert missed four days of work because of a medical condition known as endometriosis. Seibert later underwent surgery to treat her endometriosis.

In February of 2006 Seibert learned that she was pregnant and stopped taking Zoloft and Ambien for this reason.[10] She went on a maternity leave of absence because of a high risk pregnancy from July 25, 2006 to October 2, 2006 after giving birth to twins. Prior to birth of Seibert's twins, Lutron sent a letter, dated August 11, 2006, stating that Seibert would not be permitted any additional leave after her maternity leave until she returned to work and worked 1250 hours for Lutron. On September 28, 2006, Seibert met with Dr. Tirum A. Gopal, her obstetrician, who authorized Seibert to return to work on October 2, 2006. Seibert contacted Richard Wagner of Lutron on September 28, 2006 to inform him that her doctor authorized return to work on October 2, 2006.[11]

Seibert reported to Lutron on October 2, 2006. On October 18, 2006 Seibert was unable to work because her infant child was sick. Seibert missed work on

---

[9] *Id.* pp. 98-103
[10] *Id* pp. 102-103
[11] *Id.* p. 125.

November 20, 2006, because her child was again sick, and on November 27, 2006

Seibert left work early in order to take her child to a doctor's appointment.[12]

Between January and March of 2007 Seibert missed approximately seven days of

work. Seibert additionally missed three days of work due to a sinusitis illness

which Seibert submitted her doctor's note in order to explain her absence to

Lutron.[13]  Seibert used her vacation days from the Lutron in order to care for her

sick children and to take them to necessary doctor's appointments when the

children were sick.[14] Seibert was aware that it was the general practice of other

employees of the Lutron to use vacation days in lieu of using sick days.  Seibert

was told that she should use her vacation days first if she was unable to work.[15]

Seibert had not yet exhausted all of her vacation days for 2007 with Lutron

when she met with Mr. Wagner on March 23, 2007 to discuss her employment

status.[16] At that time Seibert was told that she had two options: to resign from her

employment position with the Lutron, or be terminated when she met with Mr.

Wagner on March 23, 2007.[17]  Seibert decided that she should resign from her

---

[12] *Id*.  pp. 128-30.
[13] *Id*.  p. 138.
[14] *Id*.  p. 145-46.
[15] *Id*.  pp. 164-66.
[16] *Id*.  pp. 166-68.
[17] See Appendix, Vol. II, p. 10, Wag. Aff. ¶39.

employment because she believed that she was being constructively terminated by Lutron.[18]

## V.    SUMMARY OF ARGUMENT

The District Court's finding that there were no issues of material fact as to Seibert's claim of employment discrimination based on disability and gender failed to give all inferences to Seibert, and therefore was error.[19]

## VI.    ARGUMENT

Lutron's Motion for Summary Judgment was improperly granted as the District Court failed to properly view the evidence in favor of Seibert and acknowledge that there were genuine issues of fact as to whether she suffered discrimination. This Court's standard of review of a grant of a summary judgment is plenary, with all reasonable inferences from the evidence granted to the non-movant.[20]

---

[18] See Appendix, Vol. II, p. 10, Wag. Aff. ¶39-¶40.

[19]  These claims are governed by the often discussed burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), which briefly summarized encompasses three stages: first, the plaintiff must establish a *prima facie* case of discrimination; next the burden shifts to defendant to articulate a non-discriminatory reason for its actions; and then if defendant succeeds the plaintiff must show by a preponderance of the evidence that the reasons offered by defendant are pre-textual. *See Williams v. PHA*, 380 F.3d 751, 760-61 fn. 3 (3d Cir. 2004), *quoting McDonnell Douglas*.

[20]  *See Atkinson v. Lafayette College*, 460 F.3d 447, 451 (3d Cir. 2006)

## A.    ALL INFERENCES TO SEIBERT AS TO BEING DISABLED

In *Abramson v. William Paterson College of New Jersey*[21], this Court held that it is not the province of the trial court to decide what inferences should be drawn from the evidence.   The *Abramson* Court reached that decision following an exhaustive analysis of the legal principles applicable to considering motions for summary judgment, and in the end reversed summary judgment that had been awarded to the employer.  The *Abramson* Court emphasized that evidence must be viewed in the light most favorable to the employee, rather than the employer,[22] and explained that in a discrimination case, where the plaintiff always carries the burden of proof, "an employer ... will almost never announce a discriminatory animus or provide employees or courts with direct evidence of discriminatory intent."[23]  The Court in *Abramson* also stressed the importance of viewing the evidence as a whole, rather than "in a piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury ... would be entitled to view the evidence as a whole."[24]

In his November 30, 2009, Opinion, the Honorable Lawrence F. Stengel dismisses Seibert's claim of disability based on depression when he states, "Ms.

[21]  260 F.3d 265 (3d Cir. 2001).
[22]  *Id*. at 277, *citing Howley v. Town of Stratford,* 217 F.3d 141, 151 (2nd Cir. 2000).
[23]  *Id.* at 278, *citing Iadimarco v. Runyon,* 190 F.3d. 151, 157 (3d Cir. 1999).
[24]  *Id*. at 285.

Seibert has not produced sufficient evidence to establish that her depression is

permanent or has long term impact, or that it substantially limits any life

activities.[25]  In reaching this dismissal, Judge Stengel conducted a piecemeal

analysis of Seibert's disability by both breaking it into two time periods: prior to

July 2006, and after July 2006 until her termination on March 23, 2007; and by

selecting certain facts from the record rather than viewing the record as a whole.

Specifically, Judge Stengel performed this piecemeal analysis by examining the

medical opinion of Seibert's family physician Dr. Liam, the absence of a FMLA

form by Seibert's social worker Kim Bronner, and the deposition testimony of

Seibert.[26]  As a result Judge Stengel concluded that Seibert's disability was

temporary.[27]  This analysis and conclusion is improper at the summary judgment

stage.[28]

      Seibert offered evidence acknowledged by Lutron that her family physician

Dr. Liam diagnosed her with depression, that this depression would cause her to

---

[25]  *See* Trial Court Opinion, Appendix Vol. 1 at 12.

[26]  *Id*. at 13-14.

[27]  *Id.*

[28]  In footnote 4, Judge Stengel declined to retroactively apply the January 1, 2009 amendments to the ADA. However, Seibert here notes that as of April 2010 this Court has yet to rule on retroactivity.  *See Colwell v. Rite Aid*, 602 F.3d 495, 501 fn. 5. Accordingly, Seibert again asserts these amendments and their broader protections of disabled persons apply. It is respectfully submitted that it is not Seibert's burden to show how applying the amendments cause her to prevail, as Judge Stengel suggests. Accordingly, should this Court find error with the lower court's disregard of the 2009 amendments, Seibert respectfully requests remand.

miss work, and that she would continue to miss work for an "indeterminate period of time."[29]  Seibert also contended that she missed work due to severe depression.[30] As of January 2005, Seibert's family physician opined that Seibert's episodes of depression made it "impossible to work."[31]  But after acknowledging that this should be viewed "in the light most favorable to [Seibert]"[32] the lower court went forward to view the lack of treatment or medication after July 2006 as grounds for summary judgment.[33] Judge Stengel emphasized that Seibert "offered no evidence" to support this and that there was a discrepancy between Dr. Liam stating that Seibert would miss 2-3 days of work when Seibert stated that she missed 12.[34] This is precisely the type of factual dispute properly left to a jury.

Of equal importance, Judge Stengel also improperly concluded that the absences between July 2006 and termination in March 2007 were not related to depression. Again, viewed in the light most favorable, the court below should have concluded the history of depression and absences in connection with Dr. Liam's "indeterminate period of time" raised an issue of fact for a jury rather than granting Lutron's motion.

---

[29]  *Id*. at 13.
[30]  *Id.*
[31]  *Id.*
[32]  *Id.* at 14.
[33]  *Id.* at 14-15.
[34]  *Id.*

Judge Stengel found that Ms. Seibert has not produced sufficient evidence to establish that her depression … substantially limits any life activities.[35] But properly viewed the evidence demonstrates that there was a significant history, or "record" of depression. A record of disability means an individual has a history of, or has a substantially limiting impairment.[36] A "record" of disability must still constitute a disability pursuant to the American with Disabilities Act.[37] Viewed in the light most favorable, Seibert has demonstrated a history, and therefore met her burden of establishing that her physical limitations substantially limit her in the major life activity of working. Next, as acknowledged by the Court below, the missed work had already been connected to depression. Seibert's Complaint stated that Seibert suffers from depression … limiting her ability to concentrate, interact, and perform manual tasks, sleep and work.[38] Thus, the missed work post July 2006 has been asserted in a pleading as due to depression. In her words, Seibert distinguishes from "the initial depression" and "ongoing problems reporting to work."[39] Given the history of depression medically linked to missed work in

---

[35] *Id.* at 12.

[36] *Merit v. Southeastern Pennsylvania Transit Authority,* 315 F. Supp. 2d at 701, *citing* 29 C.F.R. § 1630.2(k).

[37] *Id.*

[38] *See* Trial Court Opinion Appendix Vol. 1 at 12, *citing* Complaint ¶¶ 36-40.

[39] *See* Trial Court Opinion Appendix Vol. 1 at 13, *see also* Trial Court Opinion Appendix Vol. 1 at 12, citing Seibert's Response to Lutron's Motion for Summary Judgment.

connection to ongoing absences explained by Seibert as "problems," she has met

her burden of establishing a genuine issue of material fact as to whether, by a

preponderance of the evidence, she was disabled. But rather than credit these facts,

the lower court substituted its own judgment and concluded that Seibert's disability

was temporary. Again it cannot be stressed often enough that summary judgment

warrants all inferences to the non-movant.

### B.    TRIAL COURT ERRED CONCLUDING SEIBERT HAD NO EVIDENCE FOR "REGARDED AS" DISABLED CLAIM

To prevail when faced with a motion for summary judgment, the non-

movant first shows that her evidence is sufficient to prove the elements of a *prima

facie* case to a reasonable fact finder.[40] In order to show a *prima facie* case of

disability discrimination, she must show that: (1) she is a disabled person within

the meaning of the American with Disabilities Act; (2) she is otherwise qualified to

perform the essential functions of the job, with or without reasonable

accommodations by the employer; and (3) she has suffered an otherwise adverse

employment decision as a result of the discrimination.[41] In addition to being

actually disabled, a non-movant can show that she was "regarded as" disabled by

---

[40] *St. Mary's Center v. Hicks,* 509 U.S. 502, 506 (1993).
[41] *See Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).

the employer.[42]   Accordingly even if the court below were to find Seibert was not

actually disabled, the court must apply the rule that employees who are "regarded

as" disabled are entitled to reasonable accommodation in the same way as are those

who are actually disabled.[43]   This Court's standard of review of a grant of a

summary judgment is plenary, with all reasonable inferences from the evidence

granted to the non-movant.[44]

In *Buskirk v. Apollo Metals*[45], this Court held that "an employer's perception

that an employee cannot perform a wide range of jobs suffices to make out a

'regarded as' claim."[46] Thus any "regarded as" claim requires evidence of what the

employer believes the plaintiff can or cannot do in light of her perceived

impairments.  Similarly, in *Taylor v. Pathmark Stores, Inc.*,[47] this Court also found

several cases that support the conclusion that, in general, an employer's perception

that an employee cannot perform a wide range of jobs suffices to make out a

---

[42]   *See Williams v. Philadelphia Housing Authority Police Dep't.,* 380 F.3d 751, 766-768 (3d Cir. 2004) (employees who are "regarded as" disabled are entitled to reasonable accommodation in the same way as are those who are actually disabled); *see also Olsen v. General Electric Astrospace*, 101 F.3d 947, 954-55 (3d Cir. 1996) (same).
[43]   *See Williams v. Philadelphia Housing Authority Police Dep't.,* 380 F.3d 751, 766-768.
[44]   *Atkinson v. Lafayette College,* 460 F.3d 447, 451 (3d Cir. 2006)
[45]   307 F.3d 160, 167 (3d Cir. 2002), *citing Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180, 188 (3d Cir. 1999).
[46]   *Id.*
[47]   177 F.3d 180, 188 (3d Cir. 1999).

"regarded as" claim.[48]  And more recently in *Williams v. Philadelphia Housing Authority Police Dep't.*[49], this Court held that the lower court failed to properly consider if the employee's limitations would prevent the employee from performing in a class of jobs and because a jury could conclude that the employee "was actually (or perceived to be) precluded from working in a class of jobs..."[50]

In a footnote Judge Stengel dismisses Seibert's "regarded as" claim stating: "Ms. Seibert has set forth no evidence showing that Lutron either believed she had a substantially limiting impairment that she did not have or that it believed her impairment was more limiting than it actually was."[51]  But viewing the evidence in the light most favorable to the non-movant, there is a genuine issue of fact as to whether Lutron considered Ms. Seibert as being unable to perform a wide range of

---

[48]  *Id. citing cases including Best v. Shell Oil Co.,* 107 F.3d 544 (7th Cir. 1997) (employer relied on doctor's report and placed plaintiff on long-term disability leave; this evidence raised fact question about whether employer perceived plaintiff as disabled from all truck-driving jobs); *Pritchard v. The Southern Company Services,* 92 F.3d 1130 (11th Cir. 1996) (plaintiff's evidence that employer placed her on paid and unpaid disability leave for several months was evidence creating an issue of fact as to whether employer regarded her as being impaired.)

[49]  380 F.3d 751, 766-768 (3d Cir. 2004). The lower court in *Williams* granted summary judgment for the employer and held that the fact that the employee was unable to carry a firearm and that the employer perceived him as unable to have access to firearms did not significantly restrict the employee in the major life activity of working.

[50]  *Id.*

[51]  *See* Trial Court Opinion Appendix Vol. 1 at page 18, fn. 7.

jobs based upon her leave of absence.[52]   There is evidence that Seibert was

employed and experienced no problems for Lutron for ten years.  Beginning in

May 2005 she had to take six months of long term disability for diagnosed

depression. When Seibert returned to work in October 2006, she was informed that

her job was being phased out because the company had found other ways to get her

job done.  She was placed into a new position on October 3, 2006, but then, less

than two months later was sent back to her old position to train her replacement.

This raises a direct factual contradiction between Lutron's stated reason for

transfer, job phase out, and Lutron's actions, training a new employee for that job.

Additionally, from the end of November 2006 until the end of February 2007,

Seibert trained that replacement and then, was fired on March 23, 2007 for missing

too many days from work and not being able to learn her new position.  Again, this

contradictory evidence is properly weighed by a jury and should not be dismissed

as a matter of law.

As to the issue of whether Seibert exhausted her administrative remedies on

the "regarded as" claim, Seibert's position is that for the purposes of the summary

---

[52]   *See Best v. Shell Oil Co.,* 107 F.3d 544 (7th Cir. 1997) (employer placed plaintiff
on long-term disability leave; this evidence raised fact question about whether
employer perceived plaintiff as disabled from all truck-driving jobs); *see also
Pritchard v. The Southern Company Services,* 92 F.3d 1130 (11th Cir. 1996)
(plaintiff's evidence that employer placed her on paid and unpaid disability leave
for several months was evidence creating an issue of fact as to whether employer
regarded her as being impaired.)

judgment stage in the court below, she alleges sufficient facts during the EEOC

investigation of her claims that sets forth a "regarded as" claim.  As stated above at

length and here in sum, she alleges that she returned to work and was told her job

was being phased out, while also alleging that she trained a new employee for that

same job.[53]  This factual basis should not have been disregarded as a matter of law

by the lower court as an insufficient basis to infer that Seibert was raising whether

Lutron believed that Seibert's was unable to perform a wide range of jobs.  Unlike

the Title VII retaliation claim analyzed by this Court in *Atkinson v. Lafayette*

*College,*[54] and relied upon below by Judge Stengel,[55] the transfer by Lutron, or the

paid leave, both part of Seibert's EEOC investigation, could reasonably be inferred

as a "regarded-as" claim here.

### C.    TRIAL COURT ERRED CONCLUDING SEIBERT HAD NO EVIDENCE FOR TITLE VII CLAIM

The trial court granted Lutron's motion on two grounds: one that Seibert

failed to show an adverse employment action and two that even assuming adverse

action that there was no evidence that Lutron's actions were a pretext for

discrimination. On appeal from summary judgment this Court addresses the case

"as if [it] were the district court-that is … exercise plenary review of both facts and

---

[53] *See* Trial Court Opinion Appendix Vol. 1 at 17.
[54] 460 F.3d 447 (3d Cir. 2006).
[55] *See* Trial Court Opinion at 16, 17.

law."[56]  Additionally, in evaluating a motion for summary judgment, this Court looks at the record in the light most favorable to the non-movant all reasonable inferences from the evidence granted to the non-movant.[57]

### 1.    ADVERSE EMPLOYMENT ACTION

In *Torres v. Casio*,[58] this Court held that employee Torres had provided sufficient evidence upon which a reasonable jury could conclude that Torres' employer Casio was "setting him up for termination when it transferred him to a job that had already been eliminated" once because it was unnecessary.[59] The *Torres* court also held that a reasonable jury could conclude that the employer manager could have harbored discriminatory motives when it transferred Torres to a position from which he was eventually terminated.[60] Based on this, this Court reversed and remanded the action for trial.

The actions by an employer of employee transfer and termination in *Torres* are similar in kind and nature to Lutron's actions of transfer and termination of Seibert. However, in denying the existence of an adverse employment action, the trial court below looked only at the transfer, and not at the subsequent termination

---

[56] *See Torres v. Casio*, 42 F.3d 825, 830 (3[d] Cir. 1994).
[57] *Id.*
[58]  42 F.3d 825 (3d Cir. 1994)
[59]  42 F.3d 825, 835.
[60] *Id.*

of Seibert.[61] As the *Torres* court explained, transfer and subsequent termination can be linked as part of a larger plan to discriminate, and it was for a jury to decide as a matter of credibility whether the Casio manager has acted on his stated reason for transfer and termination, or some discriminatory animus towards Torres. In *Torres* as here the ultimate burden to convince a jury that an employer discriminated rests squarely on the employee. But under this precedent, Judge Stengel's "transfer only" analysis and conclusion that there was no adverse employment action, where Seibert was transferred *and terminated*, is error.[62] This error improperly prevents Seibert from presenting this potential link of two events to a jury. Accordingly, this error should be reversed.

## 2.    PRETEXT FOR DISCRIMINATION

As to the second part of Judge Stengel's conclusion is granting summary judgment as to gender discrimination, he writes only, "….failed to present any

---

[61] *See* Trial Court Opinion Appendix Vol. 1 at 20 addressing adverse employment action.

[62] Judge Stengel did not address Seibert's action on her last day, or refute the constructive discharge alleged in her Memorandum of Law in Opposition to Summary Judgment. Regardless whether Seibert was constructive discharged was a question for the jury. *See Sheridan v. E.I.DuPont*, 100 F.3d 1061 (3d Cir. 1996).

evidence showing that her move for the subsequent training of Matt Hoffman…was pretext for discrimination."[63]

Under the *McDonnell Douglas* paradigm, a prima facie case of unlawful discrimination under Title VII[64] is comprised of four elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff is qualified for the job; (3) the employer took an adverse action that affected the terms and conditions of the plaintiff's employment; and (4) the circumstances permit an inference of unlawful discrimination.[65] Further, the establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee.[66]

Under this paradigm, once the plaintiff has met his initial burden, the employer must state the reason for the adverse employment action or suffer the entry of judgment against it. If the defendant states a legitimate, non-

---

[63] *See* Trial Op. Appendix Vol. 1 at 20.

[64] Title VII of the Civil Rights Act of 1964, in relevant part, provides:

> (a)    It shall be an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any Individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e-2(a).

[65] *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999).

[66] *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1094; *see also, Walker v. Mortham,* 158 F.3d 1177, 1184 (11th Cir. 1998) (the prima facie case creates a presumption of intentional discrimination).

discriminatory reason for the adverse employment action, the plaintiff must then meet his burden of persuasion by proving that the plaintiff's proffered reasons are not the "true reasons for its discretion, but instead are merely a pretext for age discrimination."[67]  The plaintiff can do so by "demonstrating such weaknesses, implausibility, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them 'unworthy of credence.'"[68]  In *Sheridan v. E.I. DuPont de Nemours and Co*.,[69] the Court emphasized that a determination regarding an employer's intent to discriminate "must remain within the province of the jury."[70] The *Sheridan* Court noted that there will seldom be eyewitness testimony as to an employee's mental processes, as discrimination victims often come to the legal process without witnesses and without direct evidence.[71] A plaintiff who has

---

[67]  *See Ryder v. Westinghouse Electric Corp.,* 128 F.3d 128, 132, 136 (3d Cir. 1997).
[68]  *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994); *see also Olsen v. General Electric Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996).
[69] 100 F.3d 1061, 1071-72 (3d Cir. 1996) (*en banc), cert. denied,* 521 U.S. 1129, 117 S. Ct. 2532, 138 L. Ed. 2d 1031 (1997),
[70]  100 F. 3d at 1071
[71]  *Id*

established a prima facie case need produce very little evidence of discriminatory

motive to raise a genuine issue of fact as to pretext.[72]

In *Fasold v. Justice*,[73] this Court applying the above paradigm and

discussing the final prong, held that a reasonable factfinder could conclude that the

employers' assertion that they fired employee Detective Fasold because of

insufficient levels of arrests and investigations, unwillingness to work overtime

and abdicated responsibilities at work were averments that were "unworthy of

credence," and "merely a post hoc fabrication created to cover for an unlawful

firing."  In *Fasold* this Court concluded that Detective Fasold has satisfied the final

prong of the above paradigm and cast sufficient doubt on the employers' proffered

reason for termination so as to require the case to be submitted to a jury.[74]

Here Lutron employee Richard Wagner in his affidavit states that he

terminated Seibert because of excessive absences following her return to work in

January 2006 following a leave of absence due to her disability, as well as

following her return to work in October 2006 following a maternity leave.  Thus,

like the employers in *Fasold*, Lutron set forth its non-discriminatory reason for

termination. Under the burden shifting paradigm Seibert must now carry the ball.

---

[72]  *See Warren v. City of Carlsbad,* 58 F.3d 439, 443 (9th Cir. 1995), *cert. denied,*
516 U.S. 1171, 116 S. Ct. 1261, (1996); *see also Huff v. Uarco, Inc.,* 122 F.3d 374,
388 (7th Cir. 1997).
[73]  409 F.3d 178 (3d Cir. 2005)
[74]  409 F.3d 178, 187.

First, there is the issue of Seibert's transfer and termination being part of a larger unspoken scheme to terminate her.[75] As Wagner states, upon return from maternity leave Seibert was transferred to finished goods inventory accuracy and raw materials inventory accuracy.[76] The transfer included the new duty of "cycle-counting" that as described by Wagner was "a crucial function that must be performed on a daily basis and cannot await an employee's return to work from absence."[77] Transfer to this position directly preceded her March 23, 2007 unfavorable evaluation and termination.

But compare this with her earlier 1999 evaluation concerning missed days. In that evaluation, her supervisor stated that while initially concerned about attendance, she was pleased with Seibert's "attendance record at this time."[78] Thus from 1999 through the onset of her disability and subsequent missed work Lutron expressed no concerns about missed days. The first question raised for the jury is whether the transfer to a position with a "crucial function that must be performed on a daily basis" was circumstantial evidence of a discriminatory desire to

---

[75] *See Torres v. Casio*, 42 F.3d 825, 830 (3[d] Cir. 1994) (discussing transfer and subsequent termination of employee and possibility that factfinder could perceive underlying, hidden animus)
[76] *See* See Appendix, Vol. II  Wag. Aff. ¶ 33.
[77] *Id* ¶ 35.
[78] *Id* ¶ 11

terminate Seibert.[79] The second question for the jury is why any manager of a large business would transfer someone using her vacation days for children's medical appointments to a department with a "crucial function that must be performed on a daily basis."

Further, there is Wagner's contention that missing work without advance notice was unacceptable compared with Seibert's testimony that calling in the morning of and using vacation time was acceptable.[80] Specifically Seibert testified that when she would miss work she would put it down as a vacation day, "because I was told that I needed to use my vacation time if I was going to be out."[81] Thus, viewed in the light most favorable to Seibert, she believed she was permitted to miss work provided she use her vacation time. This factual discrepancy is properly submitted to a jury to determine whether Wagner's contention is valid, or "unworthy of credence," and "merely a post hoc fabrication created to cover for an unlawful firing."

Seibert has demonstrated implausibility, inconsistencies, and contradictions in Lutron's proffered legitimate reason for her termination such that a reasonable fact finder could rationally find them not credible. As the Supreme Court noted

---

[79] *See Torres v. Casio*, 42 F.3d 825, 830.
[80] *Compare* Appendix, Vol. II Wag. Aff. ¶¶ 36, 37 *with* Appendix, Vol. II Seibert Dep p. 166.
[81] See Appendix, Vol. II Seibert Dep p. 166.

over 25 years ago, "there will seldom be eyewitness testimony as to an employer's mental processes."[82]  Rather, an employer who discriminates may leave "no written records revealing the forbidden motive and communicate it orally to no one."[83]  In short, Seibert has raised genuine issues of material fact as to whether Lutron's explanation is legitimate or pretext.  Accordingly, she must survive summary judgment.

---

[82]  *See United States Postal Service v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482 (1983)
[83]  *See Sheridan v. E.I.DuPont*, 100 F.3d 1061,1071 (3d Cir. 1996)

## VII.  CONCLUSION

Based upon the foregoing arguments and authorities, it is respectfully submitted that Heather Seibert's Appeal should be granted, the District Court's Order granting summary judgment vacated, and this matter be remanded for further proceedings.

Respectfully Submitted,

\_\_s/_____
Edward Bigham, Esquire
Attorney I.D. No. 79321
621 Swede Street
Norristown, PA 19401
(610) 277-4868

Attorney for Appellant
Heather Siebert

_____

## UNITED STATES COURT OF APPEALS FOR
## THE THIRD CIRCUIT

| | | |
|---|---|---|
| **HEATHER SEIBERT** | : | **APPEAL** |
| **Appellant** | : | |
| | : | |
| **v.** | : | **No. 10-1091** |
| | : | |
| | : | |
| **LUTRON ELECTRONICS** | : | |
| **Appellee** | : | |
| | : | |

_____

## APPENDIX TO THE BRIEF
## OF APPELLANT HEATHER SEIBERT
## VOLUME I

 

 

This Appendix to the Brief is submitted in support of the Appeal taken

from the Order of the Honorable Lawrence F. Stengel, United States District Court

for the Eastern District of Pennsylvania, No. 08-5139.

 

 

Edward Bigham, Esquire
621 Swede Street
Norristown, PA  19401
(610) 277-4868
(610) 277-5328 Fax
Counsel for Appellant Heather Seibert

_____

**Edward Bigham  #79321**
**621 Swede Street**
**Norristown, PA  19401**
**610.277.4868**
_____

## UNITED STATES COURT OF APPEALS FOR
## THE THIRD CIRCUIT


| | | |
|---|---|---|
| **HEATHER SEIBERT** | : | **APPEAL** |
| **Appellant** | : | |
| | : | |
| **VS.** | : | **No.  10-1091** |
| | : | |
| | : | |
| **LUTRON ELECTRONICS** | : | |
| **Appellee** | : | |

_____

## APPENDIX TO THE BRIEF  VOLUME I
## TABLE OF CONTENTS

**Description**                                                    **Page No.**

1.   **Opinion of the Honorable Lawrence F. Stengel,  ……..1-24**
     **No. 08-5139.**
2.   **Order of the Honorable Lawrence F. Stengel, ………….25**
     **No. 08-5139.**
3.   **December 28, 2009 Notice of Appeal from Order ……….26**
     **Granting Summary Judgment.**

                                        _____s/_____
                                        Edward Bigham, Esquire
                                        Attorney I.D. No. 79321
                                        621 Swede Street
                                        Norristown, PA 19401

                                        Attorney for Appellant
                                        Heather Siebert

**Edward Bigham**
**#79321**
**621 Swede Street**
**Norristown, PA  19401**
**610.277.4868**
_____

### UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


**HEATHER SEIBERT**             :       **APPEAL**
**Appellant**                   :
                                :
     **VS.**                    :       **No.  10-1091**
                                :
                                :
**LUTRON ELECTRONICS**          :
**Appellee**                    :
_____

### APPENDIX TO THE BRIEF  VOLUME II
### TABLE OF CONTENTS

**Description**                                      **Page No.**

1.    **Affidavit of Richard Wagner**…………………………..  1-10

2.    **Deposition of Heather Seibert**…………………………..11-85

3.    **Docket Entries from Originating Court** ………………86-92

                        _____s/_____
                        Edward Bigham, Esquire
                        621 Swede Street
                        Norristown, PA 19401

                        Attorney for Appellant
                        Heather Siebert

## <u>CERTIFICATION OF BAR ADMISSION</u>

I, Edward Bigham, Esquire, Appellate Counsel for Heather Seibert, do hereby swear and attest that I have satisfied the requirements for application and membership to the Third Circuit Court of Appeals, and that I am currently an active member of that bar and in good standing.

Respectfully Submitted,


__s/_____

Edward Bigham, Esquire
Attorney I.D. No. 79321
621 Swede Street
Norristown, PA 19401
(610) 277-4868

Attorney for Appellant

# COMBINED CERTIFICATION OF WORD COUNT,
## IDENTICAL COMPLIANCE OF E-BRIEFS AND
## HARD COPIES AND VIRUS CHECK

I, Edward Bigham, Esquire, Appellate Counsel for Heather Seibert, do hereby swear and attest the following:

1.     Heather Seibert's Appellate Brief submitted this date conforms with the United States Court of Appeals for the Third Circuit Requirements for Briefs, Federal Rule of Appellate Procedure 28, 32 as well as Third Circuit Local Rules 28 and 32.

2.     Heather Seibert's Appellate Electronically Filed, or E-Brief submitted this date is identical in all respects as the hard copies of her Appellate Brief sent to the Clerk' Office.

3.     Prior to electronically filing Heather Seibert's E-Brief a virus check was performed using McAfee Virus Security.

Respectfully Submitted,

____s/_____
Edward Bigham, Esquire
Attorney I.D. No. 79321
621 Swede Street
Norristown, PA 19401
(610) 277-4868

Attorney for Appellant

## CERTIFICATE OF SERVICE

I, Edward Bigham, Esquire, Appellate Counsel for Heather Seibert, certify that I have served a true and correct copy of the Appellate Brief and Appendix of Heather Seibert, upon the counsel named below via electronic mail and via first-class United States Mail; postage prepaid, this 5th  Day of August, 2010, as follows:

Elizabeth A. Malloy, Esquire
Buchanan Ingersoll & Rooney PC
www.buchananingersoll.com
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia PA   19102-2555
elizabeth.malloy@bipc.com

215-665-8700 T
215-665-8760 F

I further certify that I have served 10 true and correct copies of the Appellate Brief of Heather Seibert, upon the Clerk's Office, via first-class United States Mail; postage prepaid, this 5th  Day of August, 2010, as follows:

Office of the Clerk
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

By:_____s/_____
Edward Bigham, Esquire
621 Swede Street
Norristown, PA  19401
610.277.4868

Dated:  August 5, 2010